# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GWENDOLYN J. JOHNSON, ) | 1:09-CV-929 AWI DLB |
| ) | |
| Plaintiff, ) | **ORDER ON DEFENDANTS'** |
| v. ) | **MOTION TO DISMISS** |
| ) | |
| WASHINGTON MUTUAL, et al., ) | (Doc. No. 39) |
| ) | |
| Defendants. ) | |

This case stems from a loan obtained by Plaintiff Gwendolyn Johnson ("Johnson") from 1st Choice Mortgage. The loan is now in default. Johnson filed suit in this Court. The Second Amended Complaint ("SAC") is the operative complaint. See Court's Docket Doc. No. 32. The SAC allege violations of the Truth in Lending Act ("TILA") (15 U.S.C. § 1601 et seq.), the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. § 2605 et seq.) and various state law claims. JPMorgan Chase ("Chase"),[1] California Reconveyance Co. ("CRC"), and Mortgage Electronic Registration System, Inc. ("MERS") move to dismiss the claims against them. For the reasons that follow, the motion will be granted.

## GENERAL BACKGROUND

From the SAC, this case involves the purchase of real property located at 537 Henley

---

[1] Chase indicates that it acquired certain assets and liabilities of Washington Mutual ("WAMU") from the Federal Deposit Insurance Corporation ("FDIC"). Chase also moves for dismissal of the claims against WAMU.

Parkway, Patterson, California. In March 2006, Defendant Frazier approached Johnson and said that she could get Johnson the best interest rates. When Johnson applied for the loan, she accurately described her income and provided appropriate documentation. However, without Johnson's knowledge or consent, Frazier overstated Johnson's income on the loan application by approximately $8,000. Frazier hid this deception and advised Johnson that she could get Johnson 100% financing and that the loan would be fixed at a 1.5% interest rate. However, Frazier actually sold Johnson two adjustable rate loans. The first loan was for $400,000 with a 1.5% interest rate for the first two months and that adjusted to 9.950%. The second loan was for $88,475 and adjusted from 12.5% to 18%. Frazier advised that if the loan ever became unaffordable, she would simply refinance it into an affordable loan. Johnson was not given a copy of the loan documents prior to closing and, at closing, was only given a few minutes to sign the documents.

On March 31, 2006, Johnson completed the loans on the property. The terms of the loans were memorialized in two promissory notes, which were secured by two deeds of trust on the Patterson, California property. Both deeds of trust identified Old Republic Title Company as the Trustee, 1st Choice as the Lender, and MERS as the Nominee for the Lender and as beneficiary. Following this, various assignments of the first deed of trust to other defendants occurred.[2] Subsequent to the closing on the mortgage loan, Defendant Washington Mutual ("WAMU") began demanding mortgage payments. WAMU never gave notice that it had acquired servicing rights. Johnson's initial monthly payments of $1,380.48 rose to $4002.16 per month, and continued to increase.

On February 2, 2009, a notice of default was filed with the Stanislaus County Recorder. On May 26, 2009, Defendant CRC noticed the Trustee Sale on Johnson's property. On June 2, 2009, Defendant CRC issued and recorded a Trustee's Deed Upon Sale to Defendant U.S. Bank, which identifies U.S. Bank as the foreclosing beneficiary. This lawsuit followed.

Defendants have submitted a Request for Judicial Notice ("RJN"). The Court will grant

---

[2] According to the notice of foreclosure, it is the first deed of trust that forms the basis of foreclosure. See Request for Judicial Notice Exhibit 8.

the RJN as to documents that were filed with the Stanislaus County Recorder. See United States v. 14.02 Acres, 547 F.3d 943, 955 (9th Cir. 2008).

## **LEGAL FRAMEWORK**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994). But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Furthermore, courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court has recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

3

recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, to "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see Twombly, 550 U.S. at 570; see also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint, but it may take judicial notice of public records outside the pleadings, review materials which are properly submitted as part of the complaint, and review documents that are incorporated by reference in the Complaint if no party questions their authenticity. See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to

4

amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). In other words, leave to amend need not be granted where amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

## DEFENDANTS' MOTION

### 1. Chase's Liability for Conduct of WAMU

*Defendants' Argument*

Johnson contends that Chase is liable for WAMU's conduct because Chase is WAMU's successor in interest. However, on September 25, 2008, Federal Deposit Insurance Corporation ("FDIC") was appointed receiver over WAMU. The FDIC sold certain assets and liabilities of WAMU to FDIC. As part of the agreement, Chase expressly disclaimed assumption of liability arising from borrower claims. Instead, such claims are left as the responsibility of FDIC. Johnson's claims involving WAMU are not viable against Chase.

*Plaintiff's Opposition*

Johnson argues that Chase's argument is based on documents which may not be judicially noticed and thus, may not be considered under a Rule 12(b)(6) motion. Johnson also states that Chase's liability is not based on a loan or commitment to loan by WAMU. The SAC identifies WAMU as a servicer, not a lender.

*Discussion*

Chase requests that the Court take judicial notice of the Purchase and Assumption Agreement ("PAA") between itself and the FDIC. Johnson states that she filed objections to Chase's request for judicial notice. However, no such objections have been filed. Johnson's argument in opposition simply states that she incorporates the objections by reference. Courts have taken judicial notice of the PAA. See Victoria v. JPMorgan Chase Bank, 2009 U.S. Dist. LEXIS 123538, *5 (E.D. Cal. Dec. 28, 2009); Allen v. United Fin. Mortg. Corp., 2009 U.S. Dist. LEXIS 83680, *6 (N.D. Cal. Sept. 15, 2009). The Court will take judicial notice of the PAA.

Under the PAA, Chase is not liable for "borrower claims." See Yeomalakis v. FDIC, 562

F.3d 56, 60 (1st Cir. 2009); Molina v. Wash. Mut. Bank, 2010 U.S. Dist. LEXIS 8056, 10-11 (S.D. Cal. Jan. 29, 2010); Victoria, 2009 U.S. Dist. LEXIS 123538 at *3-*6; Hilton v. Wash. Mut. Bank, 2009 U.S. Dist. LEXIS 100441, *8 (N.D. Cal. Oct. 28, 2009); PAA at ¶ 2.5. However, Chase does not reply to Johnson's argument that WAMU is alleged to be a servicer and not a lender. This argument is significant because the PAA discusses servicing of mortgages. Paragraph 2.1 of the PAA states in part, "Notwithstanding Section 4.8, [Chase] specifically assumes all mortgage servicing rights and obligations of [WAMU]." At least three courts have suggested that this Paragraph transfers liability to Chase for WAMU's servicing activities. See Allen, 2009 U.S. Dist. LEXIS 83680 at *14 n.7; In re Pena, 409 B.R. 847, 858, 861 (Bankr. S.D. Tex. 2009); Punzalan v. FDIC, 633 F.Supp.2d 406, 409-10 (W.D. Tex. 2009). As one court has explained, "the [PAA] appears to allocate WAMU's lender liability to the FDIC and to transfer WAMU's servicing liability to JPMorgan Chase." In re Pena, 409 B.R. at 861. Without further briefing from Chase regarding Paragraph 2.1, and in light of the allegation that WAMU was acting as a "servicer," the Court cannot hold at this time that the PAA eliminates Chase's liability for WAMU's conduct in this case. Dismissal of claims that are based on WAMU's servicing activities is not appropriate at this time.[3] See Allen, 2009 U.S. Dist. LEXIS 83680 at *14 n.7; In re Pena, 409 B.R. at 861; PAA at ¶ 2.1.

**2.    Second Cause of Action – Rosenthal Fair Debt Collection Practices Act**

*Defendants' Argument*

Defendants argue that, as a matter of law, the collection of debt or foreclosure of real property due to Johnson's default does not constitute "debt collection" activity. A lender enforcing its security interest under a deed of trust is not covered activity.

*Plaintiff's Opposition*

Johnson argues that unlawful debt collecting activities during foreclosure are actionable. Even if foreclosure itself does not constitute debt collection, the SAC alleges unfair conduct beyond foreclosure, such as sending deceptive letters, making phone calls, making false credit

---

[3] The Court is not foreclosing later arguments regarding the PAA. The Court merely decides that the argument as currently presented is insufficient.

6

reports, falsely stating the amount of debt and to whom the debt is owed, and increasing the amount of the debt by including excessive fees and charges.

*Discussion*

Johnson relies heavily on *McGrew v. Countrywide Home Loans, Inc.*, 628 F.Supp.2d 1237 (S.D. Cal. 2009). However, as Defendants rightly point out, a Westlaw entry states that the Southern District of California requested the decision be removed from the Federal Supplement reporter. Additionally, a review of the docket of the Southern District of California indicates that that Court *sua sponte* ordered briefing on whether it should reconsider its decision regarding the RFDCPA. Finally, as far as can be determined, *McGrew* has been cited two times, but neither time for the position advocated by Johnson. In light of the foregoing, the Court will not consider *McGrew*.

Foreclosing on a property pursuant to a deed of trust is not debt collection within the meaning of the RFDCPA. Pok v. American Home Mortg. Servicing, Inc., 2010 U.S. Dist. LEXIS 9016, *7 (E.D. Cal. Feb. 3, 2010); Ricon v. Recontrust Co., 2009 U.S. Dist. LEXIS 67807, *9 (S.D. Cal. Aug. 4, 2009); Gamboa v. Tr. Corps & Cent. Mortg. Loan Servicing Co., 2009 U.S. Dist. LEXIS 19613, *11 (N.D. Cal. Mar. 12, 2009); Izenberg v. ETS Servs., LLC, 589 F.Supp.2d 1193, 1199 (C.D. Cal. 2008). Johnson identifies other conduct by WAMU other than foreclosure. However, the SAC does not allege that WAMU was attempting to collect a consumer debt or identify which provisions of the RFDCPA were violated. See Pok, 2010 U.S. Dist. LEXIS 9016 at *7. Dismissal of this claim is appropriate.

### 3. Third Cause of Action – Negligence

*Defendants' Argument*

The SAC is deficient in that it fails to allege a cognizable duty. The simple allegation that Defendants breached a duty to not cause Johnson harm is insufficient. Further, there is no allegation that the Defendants exceeded the scope of normal money lending. Finally, Johnson does not allege how Defendants breached a duty or how their breach caused Johnson harm.

*Plaintiff's Opposition*

Johnson argues that a general duty exists to not harm another. Defendants owed a duty of

care to disclose honestly, to not charge improper fees, and to not harm Johnson's credit score. Defendants owed a duty to conduct their business in a legal manner in relation to maintaining and transferring negotiable instruments related to Johnson's loan. Also, MERS has no beneficial interest in Johnson's property and cannot be a beneficiary under the deeds of trust. Finally, reliance on the cases dealing with "money lending" is inappropriate since these moving defendants are not alleged to be money lenders.

*Discussion*

The negligence claim is alleged against all defendants. The Court will address separately the allegations made against the moving defendants.

### MERS and Chase

With respect to MERS and Chase, Johnson alleges that these Defendants breached their duty to receive, maintain, or transfer negotiable instruments related to her loan in a manner that would not harm her. See SAC at ¶ 98. Johnson also alleges that MERS breached its duty to perform administrative functions of recording, maintaining, and transferring documents in a manner that would not harm her. See id. at ¶ 99. Courts within this District have rejected these very allegations: "Absent such authority [that creates the identified duties], an alleged assumption of duty by [defendants], or a special relationship, plaintiffs cannot establish that [defendants] owed them a duty of care." Waqavesi v. Indymac Fed. Bank, FSB, 2009 U.S. Dist. LEXIS 105555, *10 (E.D. Cal. Nov. 11, 2009); see Webb v. Indymac Bank Home Loan Servicing, 2010 U.S. Dist. LEXIS 6595, *9-*10 (E.D. Cal. Jan. 6, 2010); Baisa v. Indymac Fed. Bank, 2009 U.S. Dist. LEXIS 103444, *8 (E.D. Cal. Nov. 5, 2009); Hardy v. Indymac Fed. Bank, 2009 U.S. Dist. LEXIS 84566, *19-*21 (E.D. Cal. Sept. 15, 2009); Morgera v. Countrywide Home Loans, Inc., 2010 U.S. Dist. LEXIS 2037, *12 (E.D. Cal. Jan. 11, 2010); see also Benham v. Aurora Loan Servs., 2009 U.S. Dist. LEXIS 78384, *8 (N.D. Cal. Sept. 1, 2009). Dismissal of the negligence claims against MERS and Chase is appropriate. See id.

### WAMU

The SAC alleges that WAMU breached a duty of care when it took payments to which it was not entitled, charged fees it was not entitled to charge, and wrongfully made or otherwise

authorized negative reporting of Johnson's creditworthiness. The SAC also alleges that WAMU breached statutory duties under 12 U.S.C. §§ 2605(c), (e).

With respect to 12 U.S.C. § 2605(e), for the reasons discussed under the RESPA section of this order, the negligence claim based on § 2605(e) fails.

With respect to a violation of 12 U.S.C. § 2605(c), assuming without deciding that this statute may provide the duty for a negligence claim, the SAC does not allege what damage was caused by the breach or how the breach caused harm. The SAC contains only insufficient, conclusory allegations with respect to damages and causation.

With respect to the remaining allegations, the SAC "does not identify which payments were taken, why the Defendants were not entitled to the payments, what fees were charged, nor why the credit reporting was wrongful." Gonzalez v. First Franklin Loan Servs., 2010 U.S. Dist. LEXIS 1657, *26 (E.D. Cal. Jan. 9, 2010). Additionally, the charging and collecting of improper fees would appear to sound in contract and not in tort.[4] Cf. Winter v. Chevy Chase Bank, 2009 U.S. Dist. LEXIS 99554, *6 (N.D. Cal. Oct. 26, 2009); Gaitan v. Mortg. Elec. Registration Sys., 2009 U.S. Dist. LEXIS 97117, *22-*23 (C.D. Cal. Oct. 5, 2009).

Dismissal of the negligence claims against these Defendants is appropriate.

### CRC

Although the negligence cause of action indicates that it is against "all defendants," there are no allegations against CRC. Unlike other defendants, CRC is not named in any of the relevant paragraphs. To the extent that Johnson intends to allege negligence against CRC, she fails to do so. Dismissal of CRC is appropriate.

**4.     Fourth Cause of Action – RESPA**

*Defendants' Argument*

Johnson contends that WAMU violated RESPA by not responding to a qualified written

---

[4] The Court is not convinced by Defendants' argument that they owe no duty because they did not act beyond the scope of a normal money lender. The cited case that comes closest to supporting Defendants' argument is *Wagner v. Benson*, 101 Cal.App.3d 27, 35 (1980), which involved a plaintiff's attempt to hold a bank negligent for approving a loan. However, the negligence claim against the moving Defendants is not based on the approval of Johnson's loan (the lender was 1st Choice), and Defendants have not shown that the identified conduct is sufficiently analogous. At this time, Defendants' argument in reliance on *Wagner* has not been adequately developed.

9

request dated March 31, 2009.  However, by that time WAMU no longer existed and the loan servicer was LaSalle.  Further, Johnson fails to state a claim because there is no allegation of pecuniary loss.

*Plaintiff's Opposition*

Johnson argues that she did not know that LaSalle was the servicer because notice was never sent and the notice of default references Chase.  Defendants should be estopped from perpetuating a fraud through hidden transfers.

Johnson also argues that WAMU violated 12 U.S.C. §§ 2605(b), (c) when it failed to provide notice of assignment of servicing.  Further, the SAC details other violations of RESPA by WAMU, such as failing to respond to a qualified written request ("QWR"), failing to correct improper charges and penalties, damaging Johnson's credit score, etc.

Johnson also argues that Defendants' cited authority for requiring allegations of pecuniary damages are distinguishable.  In fact, one case from New Jersey indicates that allegations of emotional distress are sufficient.  At the pleading stage, all that is required is an allegation of damage, which has been done.

*Discussion*

Johnson's RESPA claims against WAMU that are predicated on the March 31, 2009, QWR are not valid since Defendants LaSalle Bank was the servicer and WAMU was defunct. See RJN Exhibits 6, 12.  LaSalle was the entity to whom the March 31, 2009, QWR should have been sent. Johnson has cited no authority that would make WAMU liable based on the March 31, 2009, QWR.  Since WAMU was not the servicer on March 31, 2009, Johnson's RESPA claims relating to the QWR (claims predicated on Paragraphs 106, 108, 109, 110) and WAMU will be dismissed.

Johnson also alleges that WAMU failed to notify her of its transfer of servicing rights to her loan in violation of 12 U.S.C. §§ 2605(b), (c).  This RESPA violation has nothing to do with a QWR.  There is a private right of action available for a violation of 12 U.S.C. § 2605.  See Lopez v. Mortgage, 2009 U.S. Dist. LEXIS 108415, *9 (E.D. Cal. Nov. 19, 2009).  Excluding instances involving a "pattern or practice of non-compliance," "for each failure" of a defendant

to comply with § 2605, an individual plaintiff is entitled to "any actual damages . . . as a result of the [defendant's] failure." 12 U.S.C. § 2605(f)(1). Johnson does allege that she "has suffered and continues to suffer damages." SAC at ¶ 111. However, there are no other facts provided. Johnson should allege that she suffered "actual damages" and describe the "actual damages" that resulted from WAMU's failure to notify her of transfers. The damage that would result from a failure to give notice is not readily apparent. Additional facts are necessary to show that Johnson suffered "actual damage" as a result of WAMU's violation of § 2605(b), (c). The Court will dismiss this RESPA claim (Paragraph 111) as to WAMU. See Ash v. Onewest Bank, FSB, 2010 U.S. Dist. LEXIS 5768, *18 (E.D. Cal. Jan. 25, 2010); Singh v. Wash. Mut. Bank, 2009 U.S. Dist. LEXIS 73315, *16 (N.D. Cal. Aug. 19, 2009); Gorham-Dimaggio v. Countrywide Home Loans, Inc., 2009 U.S. Dist. LEXIS 52078, 29-30 (N.D. N.Y June 19, 2009); cf. Hutchison v. Delaware Sav. Bank, FSB, 410 F.Supp.2d 374, 383 (D. N.J. 2006).

### **5.** **Sixth Cause of Action – Fraud**

*Defendants' Argument*

Defendants argue that, although Johnson has segregated her fraud allegations, they do not sufficiently allege the "how, when, where, who, and by what means" of the alleged fraud. Further, Johnson fails to allege the other elements of fraud such as knowledge of falsity, intent, reliance, and damages.

*Plaintiff's Opposition*

Johnson argues that she specifically states the fraud committed by each defendant. By conspiring with one another, defendants have managed to keep Johnson from finding out the truth behind the transfers relating to her loan.

*Legal Standard*

Federal Rule 9(b) requires that, when averments of fraud are made, the circumstances constituting the alleged fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Fed. R. Civ. Pro. 9(b); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). Although the substantive elements of fraud may be set by a state law, those

elements must be pled in accordance with the requirements of Rule 9(b). See id. at 1103. Fraud allegations should specifically include "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). The plaintiff must set forth what is false or misleading about a statement, and why it is false." Vess, 317 F.3d at 1106. Stated differently, the complaint must identify "the who, what, when, where, and how" of the fraud. Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009).

In California, the "elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal.4th 979, 990 (2004); Alliance Mortgage Co. v. Rothwell, 10 Cal.4th 1226, 1239 (1995).

*Fraud Allegations In The SAC*

Johnson's fraud claim is alleged against all defendants. Johnson alleges that: (1) WAMU misrepresented to her that it had the right to collect monies from Johnson, when in fact it did not; (2) MERS misrepresented to her on the deeds of trust that it is a qualified beneficiary with the ability to assign and transfer; (3) MERS misrepresented that it followed the applicable legal requirements to transfer the deed of trust; (4) Chase misrepresented to her that it was a qualified beneficiary with the ability to assign and transfer and that it followed the applicable requirements for transferring the deed of trust; and (5) CRC misrepresented to her that it was entitled to enforce the security interest and has the right to institute non-judicial foreclosure. See SAC at ¶¶ 128, 129, 131, 134. Johnson alleges the representations were false, the Defendants knew that representations were false, the Defendants intended that Johnson rely on the representations, Johnson reasonably relied on the representations, and as a result she was harmed and suffered damages. See SAC at ¶¶ 135-139.

*Discussion*

With respect to MERS, there is a problem with the misrepresentations identified. The first misrepresentation identified is that MERS had the ability to transfer and assign when in fact

it did not. The problem is that Courts have rejected arguments that MERS lacks the to ability to transfer and assign. See Castaneda v. Saxon Mortg. Servs. 2009 U.S. Dist. LEXIS 119241, *4 n.3 (E.D. Cal. Dec. 2, 2009); Swanson v. EMC Mortg. Corp., 2009 U.S. Dist. LEXIS 107912, *26-*27 (E.D. Cal. Oct. 29, 2009); Benham v. Aurora Loan Servs., 2009 U.S. Dist. LEXIS 78384, *14 (N.D. Cal. Sept. 1, 2009); Pantoja v. Countrywide Home Loans, Inc., 640 F.Supp.2d 1177, 1188-90 (N.D. Cal. 2009). The allegations in the complaint do not identify the legal basis for the assertion that MERS lacks the ability to assign. Because other courts have found to the contrary at the motion to dismiss stage, additional allegations and/or legal authority is need to show the falsity of the representation.[5] See id. The second identified misrepresentation is that MERS followed the applicable legal requirements to transfer the note. However, Johnson does not identify which legal requirements were not followed, when the representations were made, or how the representations were made. See Kearns, 567 F.3d at 1124; Vess, 317 F.3d at 1106.

With respect to WAMU, Johnson identifies the misrepresentation as being that WAMU had the right to collect money from her. However, Johnson does not identify how the representation was made, how it is false, or when it was made. See Kearns, 567 F.3d at 1124; Vess, 317 F.3d at 1106.

With respect to Chase, the same two misrepresentations identified against MERS are also made against Chase. However, Johnson does not adequately explain how Chase is not a qualified beneficiary with the ability to assign or transfer, does not explain how the representations were made, and does not explain when the representations were made. See Kearns, 567 F.3d at 1124; Vess, 317 F.3d at 1106.

With respect to CRC, the misrepresentation identified is contrary to a recorded substitution of trustee. On February 2, 2009, it was recorded that CRC was substituted as the trustee. See RJN at Exhibit 7. From other allegations in the SAC, it appears that Johnson contends that the substitution is not effective because MERS lacks the ability to assign anything and MERS made the very first assignment of the deed of trust. However, as stated above, other

---

[5] Otherwise, the allegation adequately identifies when and how the misrepresentation was made – in writing on the deed of trust.

13

courts have found to the contrary as to MERS. Johnson needs to explain why CRC's representation is false in light of RJN Exhibit 7, how the representation was made, and when the representation was made. See Kearns, 567 F.3d at 1124; Vess, 317 F.3d at 1106.

Additionally, given the nature of mental states, the Court finds that the elements of knowledge and scienter have been adequately alleged. However, Johnson does not explain how she relied on the representations or what damages resulted from the reliance. See Robinson Helicopter, 34 Cal.4th at 990. The allegations with respect to these elements are insufficient legal conclusions. See Iqbal, 129 S.Ct. at 1949-50.

Dismissal of the fraud claim against these moving Defendants is appropriate.[6]

### 6. Tenth Cause of Action – Wrongful Foreclosure

*Defendants' Argument*

Defendants argue that the deeds of trust contain a power of sale that applies if Johnson fails to comply with the terms of the loan. Johnson failed to make payments, and foreclosure by CRC was appropriate. Further, at the time of foreclosure, neither MERS nor Chase were beneficiaries under the deeds of trust and did not participate in the foreclosure.

*Plaintiff's Opposition*

Johnson argues that possession of the promissory note is a prerequisite for initiating a foreclosure sale. None of the defendants named in this case have proffered proof of ownership of the notes. For this reason, the defendants are third party strangers to the deeds of trust. None of the defendants are in possession of the notes, and are not beneficiaries, assignees, or employees of the entity in possession of the note and thus, are not entitled to enforce the security. Further, since there was fraud at the inception of the loan, defendants were not appropriate mortgagees.

*Discussion*

The SAC relies on Commercial Code § 3301 to allege that possession of the note is required in order to foreclose. However, "§ 3301 reflects California's adoption of the Uniform

---

[6] Defendants cite to a state law case for the proposition that a speaker's authority to speak for a corporation must be pled in alleging fraud. Defendants cite no Ninth Circuit authority for this proposition. Without further authority, the Court will not require that the speaker's authority to be identified in order to comply with Federal Rule of Civil Procedure 9(b)'s specificity requirements.

Commercial Code, and does not govern non-judicial foreclosures, which is governed by California Civil Code § 2924." Pok v. American Home Mortg. Servicing, Inc., 2010 U.S. Dist. LEXIS 9016, *19 (E.D. Cal. Feb. 3, 2010); Quintero Family Trust v. OneWest Bank, F.S.B., 2010 U.S. Dist. LEXIS 6618, *20 (S.D. Cal. Jan. 27, 2010); Gaitan v. Mortgage Elec. Registration Sys., 2009 U.S. Dist. LEXIS 97117, *27-*28 (C.D. Cal. Oct. 5, 2009). As numerous courts have held, production of the original note is not required to initiate non-judicial foreclosures in California. See Pok, 2010 U.S. Dist. LEXIS 9016 at *19; Pagtalunan v. Reunion Mortg., Inc., 2009 U.S. Dist. LEXIS 34811, *6 (N.D. Cal. Apr. 8, 2009); Putkkuri v. ReconTrust Co., 2009 U.S. Dist. LEXIS 32, *5 (S.D. Cal. Jan 5, 2009).

The SAC also alleges that the improper transfers caused violations of Civil Code § 2923.5. The Court assumes that Johnson means that the transfers were improper due to MERS's status. However, as discussed above, courts have rejected this argument and Johnson has not adequately explained how MERS could not transfer its beneficial interests. See, e.g., Castaneda, 2009 U.S. Dist. LEXIS 119241 at *4 n.3; Benham, 2009 U.S. Dist. LEXIS 78384 at *14. Further, Johnson does not indicate which provisions of Civil Code § 2923.5 were violated. If Johnson contends that the statute was violated, she should identify which particular provisions were violated.

Dismissal of this claim is appropriate.

**7.     Seventh Cause of Action – Cal. Bus. & Prof. Code § 17200 et seq. ("UCL")**

*Defendants' Argument*

Defendants argue that the basis for Johnson's claim is not clear as she has only alleged in a conclusory fashion that the Defendants violated the UCL. Johnson has not pled fraud with the requisite particularity. Johnson has not shown or identified a particular law as having been violated by these Defendants. Finally, Johnson has not explained how these Defendants have engaged in an unfair business practice.

*Plaintiff's Opposition*

Johnson argues that the paragraphs that have been incorporated by reference show that laws have been violated, specifically the RFDCPA, RESPA, fraud, and negligence. Further,

Johnson argues that she has pled MERS has violated Cal. Corp. Code § 2105(a) and alleged that its practice of casually initiating foreclosure proceedings against borrows is unduly harmful.

*Legal Standard*

The UCL prohibits "three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent." In re Tobacco II Cases, 46 Cal.4th 298, 311 (2009); Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 168, 180 (1999).

For claims based on "unlawful" conduct, the UCL "borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable . . . and subject to the distinct remedies provided thereunder." Farmers Ins. Exch. v. Superior Court, 2 Cal.4th 377, 383 (1992). In other words, a "defendant cannot be liable under [the UCL] for committing 'unlawful business practices' without having violated another law." Ingles v. Westwood One Broadcasting Servs., Inc., 129 Cal.App.4th 1050, 1060 (2005).

For claims based on "fraudulent" conduct, "fraudulent conduct" under the UCL "does not refer to the common law tort of fraud . . . ." Puentes v. Wells Fargo Home Mortg., Inc., 160 Cal.App.4th 638, 645 (2008). A business practice is fraudulent under the UCL if "members of the public are likely to be deceived." Kaldenbach v. Mutual of Omaha Life Ins. Co.,178 Cal.App.4th 830, 848 (2009). Whether a business practice is "fraudulent" is "based on the likely effect such practice would have on a reasonable consumer." McKell v. Washington Mutual, Inc., 142 Cal.App.4th 1457, 1471 (2006).

*Discussion*

With respect to WAMU, the Court reads the SAC as alleging "unlawful" and fraudulent business practices. See SAC at ¶ 144. Johnson alleges that WAMU violated RESPA, was negligent, engaged in fraud, and violated the RFDCPA. See id. However, as discussed above, Johnson has not adequately pled violations of these laws. Since the identified predicate laws have not been sufficiently pled, the "unlawful conduct" UCL claim against WAMU also fails. See Ingles, 129 Cal.App.4th at 1060. Further, assuming that the SAC's incorporation of preceding paragraphs by reference is Johnson's method of complaining about all of WAMU's

conduct, the SAC does not explain how the specific practices of WAMU were likely to deceive the public. See Puentes, 160 Cal.App.4th at 645.

With respect to CRC and Chase, the Court reads the SAC as alleging violations of the UCL through fraud and wrongful foreclosure, which is predicated on a violation of Cal. Civ. Code § 3301. See SAC at ¶¶ 147, 171, 172. Again, as discussed above, Johnson has not adequately pled a causes of action for wrongful foreclosure because Civil Code § 3301 does not apply to this case. Since the predicate law is not applicable, the "unlawful conduct" UCL claim against CRC and Chase also fails. See Ingles, 129 Cal.App.4th at 1060. Further, the SAC does not explain how the specific practices of CRC and Chase were likely to deceive the public.[7] See Puentes, 160 Cal.App.4th at 645.

With respect to MERS, the SAC alleges that the negligent and fraudulent conduct of MERS violated the UCL. See SAC at ¶ 146. Once more, as discussed above, Johnson has not viably alleged negligence against MERS.[8] Further, the opposition is attempting to raise a violation of law that is not identified under this cause of action.[9] Indeed, California Corporation Code § 2105 appears nowhere in the SAC. Finally, the SAC does not explain how the specific practices of MERS were likely to deceive the public.[10] See Puentes, 160 Cal.App.4th at 645.

Finally, although Johnson states that the moving Defendants' conduct was "unfair," the allegation is a mere legal conclusion and there is no explanation how the conduct of the moving Defendants was "unfair." Cf. Davis v. Ford Motor Credit Co., LLC, 179 Cal.App.4th 581, 583-88 (2009) (discussing the split of authority regarding various methods of establishing "unfair" conduct).

---

[7] The Court assumes that the SAC's incorporation of preceding paragraphs by reference is Johnson's method of complaining about all of CRC and Chase's respective conduct.

[8] It is unknown whether Johnson contends that the negligence alleged against MERS would be "unlawful," "unfair," "fraudulent" or some combination thereof.

[9] Similarly, Johnson's argument in opposition regarding MERS's foreclosure practices do not seem to be applicable to this case as her claim for wrongful foreclosure is not alleged against MERS. See SAC at ¶¶ 170-178.

[10] The Court assumes that the SAC's incorporation of preceding paragraphs by reference is Johnson's method of complaining about all of MERS's conduct.

Dismissal of this cause of action against WAMU, CRC, MERS, and Chase is appropriate. See <u>Morgera</u>, 2010 U.S. Dist. LEXIS 2037, *18-*19.

## **<u>CONCLUSION</u>**

Defendants MERS, CRC, and Chase/WAMU's motion to dismiss is generally meritorious. However, at this time Chase has not sufficiently shown that dismissal based on the PAA for WAMU's loan "servicing" activities is appropriate. Nevertheless, each specifically challenged cause of action is deficient and dismissal will be granted.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss is GRANTED;
2. The Second, Third, Fourth, Sixth, Seventh, and Tenth causes of action against Defendants CRC, MERS, and Chase/WAMU are DISMISSED; and
3. Johnson may file an amended complaint that is consistent with this order and Federal Rule of Civil Procedure 11 within twenty (20) days of service of this order.

IT IS SO ORDERED.

**Dated: February 24, 2010**          **/s/ Anthony W. Ishii**
CHIEF UNITED STATES DISTRICT JUDGE